UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-cv-24442-BLOOM/Torres

MARIE JOLIBOIS,

      Plaintiff,

v.

PUBLIC HEALTH TRUST OF
MIAMI-DADE COUNTY
*d/b/a* Jackson Health System

      Defendant.

_____/

## ORDER ON MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendant Public Health Trust of Miami-Dade County ("PHT") *d/b/a* Jackson Health System's Motion for Summary Judgment ("Motion"), ECF No. [43]. Plaintiff Marie Jolibois filed a Response ("Response"), ECF No. [51], to which Defendant filed a Reply, ECF No. [55]. The Court has carefully reviewed the Motion, all supporting and opposing submissions,[1] the record in this case, the applicable law, and is otherwise fully advised. For the reasons discussed below, the Motion is granted in part and denied in part.

## I.    BACKGROUND

Plaintiff brings claims against Defendant, her former employer, for Retaliation under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq. ("Title VII") (Count I); Retaliation under the Florida Civil Rights Act, Fla. Stat. § 760.01 et seq. ("FCRA") (Count II); Retaliation under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA") (Count III); Retaliation under

---

[1] Defendant filed a Statement of Material Facts with its Motion for Summary Judgment. ECF No. [42]. Plaintiff filed a Response to Defendant's Undisputed Facts. ECF No. [52]. Defendant then filed a Reply to Plaintiff's Additional Facts, ECF No. [54].

42 U.S.C. § 1981 and 42 U.S.C. § 1983 (Count IV); Discrimination on the Basis of her Race and Color under Title VII (Count V); Discrimination on the Basis of her Race and Color under § 1981 and § 1983 (Count VI); Discrimination on the Basis of her Race and Color under the FCRA (Count VII); Discrimination on the Basis of National Origin under Title VII (Count VIII); Discrimination on the Basis of National Origin under § 1981 and § 1983 (Count IX); Discrimination on the Basis of National Origin under the FCRA (Count X); Discrimination on the Basis of Disability under the FCRA (Count XI); Discrimination on the Basis of Disability under the ADA (Count XII); Interference under the Family Medical Leave Act ("FMLA") (Count XIII); and Retaliation under the FMLA. ECF No. [26].

Based on the parties' briefings and the evidence in the record, the following facts are not genuinely in dispute unless otherwise noted.

## A. Material Facts

### i. Applicable Policies

Defendant Public Health Trust of Miami-Dade County ("PHT") operates Jackson Health System ("JHS"), which consists of several hospital and clinics throughout Miami-Dade County, including Jackson Memorial Hospital. ECF No. [42] ¶ 1; ECF No. [52] ¶ 1. Like all PHT employees, Jolibois received an employee handbook setting forth a summary of PHT's policies, basic information about the benefits and services available to PHT employees, and an outline of PHT's rules of employment ("Employee Handbook."). ECF No. [42] ¶ 2; ECF No. [52] ¶ 2. The Employee Handbook advised Jolibois of basic procedures to follow when an injury or illness occurred, stated the types of leave available, including leave related to the Family and Medical Leave Act ("FMLA"), and advised her to review PHT's Personal Leave, Leave of Absence, Mandatory Leave policy for more information. ECF No. [42] ¶ 3; ECF No. [52] ¶ 3. PHT's Personal Leave, Leave of Absence, Mandatory Leave Policy No. 319 ("Leave Policy") defines

PHT's policy and procedure regarding absences from work-related injuries and various types of leave, including FMLA leave. ECF No. [42] ¶ 5; ECF No. [52] ¶ 5. According to the Leave Policy, "[a]ll paid personal leave must be approved by the employee's department head, supervisor, or other designee. . . . Requests for planned personal leave of more than three (3) days shall be submitted at least forty (40) days in advance unless extenuating circumstances give rise to the need to submit requests within a shorter time frame." ECF No. [42] ¶ 6; ECF No. [52] ¶ 6. The Leave Policy further notes that "[l]eave of absence and planned requests must be submitted and approved by the manager at least 30 days in advance of the start of the leave unless the need for leave was unforeseeable and cannot be delayed 30 days." ECF No. [42] ¶ 7; ECF No. [52] ¶ 7. Jolibois was aware of PHT's Leave Policy. ECF No. [42] ¶ 9; ECF No. [52] ¶ 9.

PHT also has an Anti-Discrimination and Retaliation Policy, which notes that "[a]ny employee who believes he/she has been subjected to discrimination, or retaliation, or has been a witness to discrimination or retaliation, in violation of JHS policies should file a complaint within ninety (90) days of the alleged discriminatory or retaliatory action." ECF No. [42] ¶ 10; ECF No. [52] ¶ 10. Jolibois was aware of this policy. ECF No. [42] ¶ 11; ECF No. [52] ¶ 11.

PHT claims that Jolibois never filed a formal complaint with PHT's Office of Employee/Labor Relations and Workforce Compliance (E/LR&WC) or Human Resources ("HR") regarding her claims of discrimination, retaliation, or any other mistreatment she suffered pursuant to PHT's Anti-Discrimination and Retaliation Policy. ECF No. [42] ¶ 14. Plaintiff responds that "Plaintiff alleged to complain to HR and others." ECF No. [52] ¶ 14 (citing Plaintiff's deposition p. 124:5-10)).

### ii. Jolibois' Work History with JMH

Jolibois began her career at PHT on March 4, 2002. ECF No. [42] ¶ 15; ECF No. [52] ¶ 15. On August 2, 2015, Jolibois worked as a Clinical Care Coordinator at JMH in the Patient

Transfer Center ("Transfer Center"). ECF No. [42] ¶ 17; ECF No. [52] ¶ 17. From 2018 until November 6, 2022, Jolibois' direct supervisor was Cynthia Iduate. ECF No. [42] ¶ 18; ECF No. [52] ¶ 18. In the Transfer Center, one of Iduate's responsibilities was to provide guidance and feedback to her employees when errors occur so that an employee has the opportunity to learn and grow. ECF No. [42] ¶ 20; ECF No. [52] ¶ 20.

Employees in Jolibois' classification, including Jolibois, are represented by the Service Employees International Union, Local 991 ("Union"). ECF No. [42] ¶ 24; ECF No. [52] ¶ 24. The Union's Collective Bargaining Agreement ("CBA") details an employee's rights relating to vacation and leave time. ECF No. [42] ¶ 28; ECF No. [52] ¶ 28. While the Union is the exclusive bargaining representative for employees in Jolibois' classification, the Union does not investigate discrimination and retaliation claims on behalf of PHT, and thus, making a verbal or written complaint to the Union regarding another PHT employee does not comply with PHT's Anti-Discrimination and Retaliation complaint procedures. ECF No. [42] ¶ 29-30; ECF No. [52] ¶ 29-30.

PHT asserts that that Iduate never accused Jolibois of being unfit for her position or for being on drugs. ECF No. [42] ¶ 22. Jolibois states that Kyra Collins, an employee of PHT, testified in her deposition that Iduate and PHT were trying to build a case against Jolibois and made it very hard for Jolibois to stay there. ECF No. [52] ¶ 22; ECF No. [51].

### iii. Comparators

Jolibois believes that she was treated differently from her coworkers Orlando Hendrick, Diana Sabillon, and Alberto Rico. ECF No. [42] ¶ 31; ECF No. [52] ¶ 31. This belief is based on Jolibois' perception that "they were the favorites. . . . they get everything planned for them, even if they don't ask for it." ECF No. [42-2] 142:13-17. Jolibois also believes that Hendrick and Rico were able to take extended amounts of time-off while she was not. ECF No. [42] ¶ 33; ECF No.

[52] ¶ 33. All of Jolibois' colleagues, however, experienced denials of their non-FMLA requested time-off so that Iduate could ensure that there was enough staff to meet the needs of the Transfer Center patients. ECF No. [42] ¶ 34; ECF No. [52] ¶ 34.

### iv. Jolibois' Protected Class

Jolibois identifies as Haitian and black. ECF No. [42] ¶ 35; ECF No. [52] ¶ 35. Jolibois never told Iduate that she identified as black or Haitian. ECF No. [42] ¶ 36; ECF No. [52] ¶ 36. Jolibois felt that she was treated differently because Iduate nitpicked her work, made her feel outcasted, and ignored her. ECF No. [42] ¶ 40; ECF No. [52] ¶ 40. Jolibois, however, did not ask her coworkers whether they felt mistreated by Iduate. ECF No. [42] ¶ 41; ECF No. [52] ¶ 41.

The following facts are disputed:

PHT asserts Iduate never made any comments about Jolibois' race or national origin in Jolibois' presence. ECF No. [42] ¶ 37. Jolibois responds with a portion from Collins' deposition:

> Q. And why do you say that her being Haitian or her having an accent had something to do with the way that [Iduate] treated her?
> A. Because there have been other Caucasian ethnic nurses that have come in with very thick accents and very poor grammar skills, and it was never once brought to my attention any type of issue with [Iduate] on them.

ECF No. [51-2] 47:2-8.

PHT asserts there was nothing that Iduate said to Jolibois that indicated that Jolibois was treated a certain way based on her race, color, or national origin. ECF No. [42] ¶ 38. PHT states that Jolibois' basis for her claim that she was treated differently by Iduate is because none of her coworkers showed signs that they were disappointed with Iduate or upset about how she treated them. *Id.* ¶ 39.

Jolibois responds that she was "nitpick[ed] for every little thing," and that other nurses were allowed to take more time-off. *See* ECF No. [52] ¶ 38-39; ECF No. [42-2] 141:7-25; 136:1-8. Jolibois asserts that every time she was sent to Iduate's office "it is for something that would

destroy [her] . . . unable to . . . finish the day, because [she is] so upset about what [Iduate] just did, she just said[.]" ECF No. [42-2] 91:20-23; ECF No. [52] ¶ 38.

### v. Jolibois' Fitness for Duty Exam

Pursuant to the terms of the CBA, department directors:

[H]ave the authority to require employees that have been determined, through reasonable suspicion, by the Department to possibly suffer from a physical, psychological or psychiatric impairment which may prevent the employee from satisfactorily performing the complete duties and responsibilities of his/her position, to submit to a physical, medical, psychological, or psychiatric examination deemed necessary for purposes of determining the employee's fitness to perform the complete duties and responsibilities of his/her position.

ECF No. [42-1] ¶ 41; ECF No. [52] ¶ 43.

All PHT employees required to take a fitness for duty exam must submit to a drug and alcohol test. ECF No. [42] ¶ 44; ECF No. [52] ¶ 44. After consulting with her supervisor and PHT's Office of Employee/Labor Relations & Workforce Compliance, it was determined by PHT's Office of Employee/Labor Relations & Workforce Compliance that Jolibois should be scheduled for a fitness for duty exam. ECF No. [42] ¶ 55; ECF No. [52] ¶ 55. On March 3, 2022, Jolibois was advised that she was required to submit to a mandatory fitness for duty exam. ECF No. [42] ¶ 56; ECF No. [52] ¶ 56. While on Administrative Leave due to her pending fitness for duty exam, Jolibois was being paid for her time-off. ECF No. [42] ¶ 57; ECF No. [52] ¶ 57. Jolibois was cleared for duty at the end of March 2022 and returned to work. ECF No. [42] ¶ 59; ECF No. [52] ¶ 59.

The following facts are disputed:

PHT contends that beginning in 2019, Iduate began to become concerned about Jolibois' mental health, her ability to handle the stress of the position, and her ability to complete the duties and responsibilities assigned to her as a result. ECF No. [42] ¶ 45. Specifically, on April 8, 2019, in response to Iduate pointing out a mistake made by Jolibois and advising her to read her

colleagues' notes before simply responding to an inpatient transfer, Jolibois responded "I am so sorry ma'am for being stupid and ignorant." *Id.* ¶ 46; ECF No. [42-3] at 8.

The following week, on April 15, 2019, in response to Iduate pointing out a mistake made by Jolibois, Jolibois stated "I do understand, I am making a lot of terrible mistakes these days." ECF No. [42] ¶ 47; ECF No. [42-3] at 9. Iduate responded that "[i]t is not ok for [Jolibois] to continue to make so many mistakes" and that if there was anything she or Barbara Ortiz, the Senior Director of the Transfer Center, could help with, to let them know. ECF No. [42-3] at 9; ECF No. [42] ¶ 48. Jolibois responded, "[s]o many mistakes in my work[], the transfer center is probably going backward[s] because of me. After all you do, I don't think there is anything else the department can do to help me get better." *Id.*

On January 20, 2022, Iduate was forwarded an email that Jolibois had sent Ortiz. ECF No. [42] ¶ 49. The subject line of the email was "help is needed." *Id.*; *see* ECF No. [42-3] at 10. In the email, Jolibois told Ortiz:

> I need your help. My time is up at the transfer center, the tension is too high . . . . I am tired of feeling disappointed and unappreciated. . . . Please do not see me as your employee but as someone who needs help. . . . If I do not move, one day my body will make me because I am very close to hav[ing] [sic] a stroke. . . . Desperately I am begging for your assistance.

*Id.*

PHT asserts the body of that email detailed concerning thoughts indicating to Iduate that Jolibois was having trouble managing her high stress position and was misinterpreting critiques of her work. ECF No. [42-3] ¶ 19.

On February 13, 2022, Iduate received another email from Jolibois stating, "I don't know if I can handle my life in the transfer center until April[.]" ECF No. [42] ¶ 51; ECF No. [42-3] at 11. Then, one of Jolibois' colleagues advised Iduate that Jolisbois said, "I should have died before

coming to the transfer center today." ECF No. [42] ¶ 52. This comment, considering the other concerning remarks made by Jolibois, caused Iduate to believe that Jolibois' mental health was declining and that she may need to be assessed to determine if she was able to perform the duties and responsibilities of her position and manage her stress levels. *Id.* ¶ 53. Those concerns did not arise for Jolibois' coworkers. *Id.* ¶ 54.

In response, Jolibois presents portions of her deposition. ECF No. [52] ¶¶ 45-54. Responding to a question if she claimed that PHT discriminated against her because of her disability, Jolibois stated that the fitness for duty exam "is related to [her] chronic disorder. They sent [Jolibois] to do [the exam] to find something wrong, to find something that would qualify me for disability." ECF No. [42-2] 84:6-8. Jolibois stated that "at the beginning, [she] was overwhelmed" and "did not know what to do to be able to . . . do [her] work at the Transfer Center." *Id.* 85:3-5. Jolibois claimed she emailed Ortiz to tell her that Iduate was discriminating against her, and so that Ortiz could report it to HR. *Id.* 85:5-9. Jolibois further stated that people said she was suicidal, but "that did not have anything . . . related to [her] email." *Id.* 85:13-18.

Further, Jolibois wrote in an April 27, 2019 email to Ortiz that "things are getting worse. . . . I have been bullied, degraded, harassed, discriminated every day that I have to work." *Id.* 87:2-4. This email was sent to HR, who called a meeting with her, Ortiz, and Iduate. *Id.* 88:4-5. Jolibois claims that, at the meeting, they discussed issues "not related to [her] email at all," and that the manager of HR asked, "do you want to lose your 17 years at Jackson?" which Jolibois thought that meant if she continued to report Iduate, she would get fired. *Id.* 88:11-25. Jolibois also stated that she complained about Iduate's behavior to Ortiz very often but that it did not go anywhere, until March 4, 2022, when Ortiz told Jolibois that she had to quit. *Id.* 89:5-8. She claims that when she

was sent home, she sent a letter to Ortiz, Iduate, HR, the Union, and PHT administration, that no one acknowledged. *Id.* 89:15-20.

### vi. Jolibois' Time-Off Requests

Iduate is the only manager that approves Jolibois' schedule. ECF No. [42] ¶ 60.

PHT asserts that although Jolibois claims she sought leave for planned procedures, she cannot identify the specific time frame or date that she requested time-off and was denied. ECF No. [42] ¶ 61. Jolibois responds that she recalled one instance where she told Iduate she had an appointment the following day that fell close to her work shift, and Iduate asked Jolibois if she could come into work after. ECF No. [42-2] 151:1-2. Jolibois stated that when Iduate asked if she could come back, Jolibois didn't "have any other choice. Then that means I have to come back." *Id.* 151:3-4.

PHT argues Jolibois sought time-off for multiple eye surgeries in 2021 that were approved late by Matrix, causing Jolibois to have to come back to work. *Id.* ¶ 62. Jolibois responds that eye surgery was on her day off and then she came back to work. ECF No. [42-2] 75:11-12.

PHT further contends that Jolibois does not remember the specific days that she was denied time-off, and she never asked her coworkers or Iduate why they were allowed to take time-off while her requests were denied. *Id.* ¶ 66, 68-69. Jolibois responds and cites to her deposition testimony that the amount of notice varied, "[i]t can be the next day, it can be a week, or it can be a month. And it's going to depend on how that day is going, how busy is the Transfer Center." ECF No. [42-2] 152:8-11.

Jolibois was denied time-off requests in 2021 and 2022 for the following reasons: another coworker requested the same timeframe off at an earlier date; her unit was short-staffed, and the volume of cases could not support the time-off requested; the type of time-off requested, i.e., educational days, was exhausted, and Jolibois requested time-off after the time to do so had

elapsed. ECF No. [42] ¶ 70; *see* ECF No. [42-3] ¶ 35. Jolibois raises an instance where her coworkers, Hendrick and Rico, were going on vacation all the time while her time-off requests were denied. ECF No. [52] ¶ 71; ECF No. [42-2] 45:15-25.

### vii. Jolibois' FMLA Requests

PHT's FMLA leave applications are processed by Matrix Absence Management ("Matrix"). ECF No. [42] ¶ 71; ECF No. [52] ¶ 72. The Leave Policy states that all "[a]ll new FMLA . . . requests . . . must be initiated by the employee calling Matrix at 877-202-0055." ECF No. [42] ¶ 72; ECF No. [52] ¶ 73. Regarding intermittent use of FMLA Leave, the Leave Policy states:

> Employees who have been approved to use FMLA . . . leave on an intermittent basis or to reduce the number of hours worked in a day or work week for a specific reason or covered party must contact manager immediately and Matrix by calling 1-877-202-0055 within 48 hours of absence to obtain approval for each period of time off requested.

ECF No. [42] ¶ 73; ECF No. [52] ¶ 74.

Jolibois applied for FMLA leave by submitting medical documentation to Matrix. ECF No. [42] ¶ 76; ECF No. [52] ¶ 77. Jolibois understood the FMLA process and was able to apply for FMLA successfully. ECF No. [42] ¶ 82; ECF No. [52] ¶ 83.

The following facts are disputed:

PHT asserts Jolibois never had a properly submitted FMLA request denied. ECF No. [42] ¶ 74, 78, 79. PHT also contends that the FMLA process had nothing to do with Iduate or PHT. ECF No. [42] ¶ 80. Further, PHT argues that there was never a time where Jolibois requested time-off for a medical appointment or procedure that was approved for intermittent FMLA, and Iduate denied that request. ECF No. [42] ¶ 81. PHT asserts though, that Jolibois believes that Iduate treated her poorly by calling her and nitpicking her after she applied for FMLA leave or returned from FMLA leave. ECF No. [42] ¶ 83. Jolibois responds with a portion of her deposition, where

she stated that one time she called Iduate to request an additional day of leave, and Iduate asked, "again?" ECF No. [42-2] 64:13-15.

PHT also contends Iduate never said anything that this treatment was related to Jolibois' FMLA leave, that she was unhappy with Jolibois' FMLA leave, or that Jolibois was not allowed to use her FMLA leave for her appointments. ECF No. [42] ¶ 84, 86. Jolibois responds with a portion of her deposition, where she stated:

> [E]ven though I have FMLA I could not take the right . . . to be home when I am sick. Many time I went to work with my pain because I know . . . I should not call. If I call, something is happen for me and was waiting for me, and I don't want it. Cindy has behavior when you call out. Cindy will retaliate you when -- when you call out. When I call out, something is coming; wait for it.

ECF No. [42-2] 105:7-13. Further, Jolibois stated that she could see the different treatment because she was the only black nurse in the group and was the only one whose time-off requests were rejected. ECF No. [42-2] 48:6-9. Also, PHT contends there was never an instance where Jolibois informed Iduate she could not return to work after an appointment and Iduate denied this request. ECF No. [42] ¶ 87.

### viii.   Jolibois' Disability

Jolibois does not have a disability, and her chronic disorder does not stop her from doing anything. ECF No. [42] ¶ 89; ECF No. [52] ¶ 89. Both parties cite to Jolibois' deposition where in response to the question, "Ms. Jolibois, do you believe that you have a disability?" Jolibois replied, "[n]o, I don't have a disability. I have a disorder. I have a chronic disorder . . . [but] that does not stop me from doing anything. I always work for my living, so I'm not disabled." ECF No. [42] ¶¶ 89-90; ECF No. [42-2] 92:11-13.[2] There are no activities that Jolibois is unable to perform because of her illness. *See* ECF No. [42] ¶ 95; ECF No. [52] ¶ 95.

---

[2] Jolibois disputes ¶¶ 89-91, and 93, but cites to the same portions of Jolibois' deposition and does not properly address this statement directly. *See* ECF No. [52] ¶¶ 89-91, ¶ 93. Pursuant to Federal Rule of Civil

### ix.  Jolibois' Resignation

Effective November 6, 2022, Jolibois resigned from her position at PHT after providing Iduate with a resignation letter and executing a separation checklist. ECF No. [42] ¶ 97; ECF No. [52] ¶ 97. The following facts are in dispute:

PHT contends that no one forced Jolibois to write the resignation letter, nor did anyone tell her what to write in the resignation letter. ECF No. [42] ¶¶ 98-99; *see* ECF No. [42-2] 120:16-21. PHT further asserts that Jolibois' resignation was voluntary, and that she ultimately resigned because she was sent for a fitness for duty exam on March 4, 2022. ECF No. [42] ¶ 101.

Jolibois responds with portions of her and Collins' depositions. ECF No. [52] ¶¶ 98-102. Collins stated that she spent "many of nights with [Jolibois] with her crying in frustration. . . . because now this lady is now her boss . . . . And the way that [Iduate is] talking to her. And just seemed like a buildup constantly being after [Jolibois] . . . [until] it ended up to what it ended up to be." ECF No. [51-2] 10:21-25; 11:1-2. Jolibois also stated that, "[t]hey basically pushed me out." ECF No. [42-2] 60:4. Jolibois also claimed that she "was forced to make the decision to resign." *Id.* 128:16-17; 165:23-25.

### x.  Jolibois' EEOC Charge

On June 15, 2022, Jolibois filed a Charge of Discrimination with the Equal Opportunity Commission ("EEOC Charge") claiming discrimination by PHT based on her national origin, race, and disability after being sent for the fitness for duty exam. ECF No. [42] ¶ 103; ECF No. [52] ¶ 103. Jolibois did not tell anyone that she filed an EEOC Charge but believes that she was given the "silent treatment" by Ortiz and Iduate after she filed it. ECF No. [42] ¶ 104-05; ECF No. [52] ¶ 104-05. Jolibois also claims to have made a verbal complaint to her Union in March of 2022

Procedure 56(e)(2), and the additional support in the record, the Court considers this fact undisputed.

12

about the fitness for duty exam. ECF No. [42] ¶ 107; ECF No. [52] ¶ 107. PHT has not been involved in any investigation involving Jolibois, including the investigation regarding Jolibois' EEOC Charge, that concluded or uncovered that Jolibois was being discriminated against in violation of the Florida Civil Rights Acts or other provisions. ECF No. [42] ¶ 111; ECF No. [52] ¶ 111. The following facts are disputed:

PHT asserts that Jolibois did not complain to anyone about the silent treatment. ECF No. [42] ¶ 106. Jolibois responds with a portion of her deposition, where she claimed it was because nobody cared. ECF No. [52] ¶ 106. PHT asserts that other than Jolibois' EEOC Charge and Union grievance, she did not make any other complaints related to her chronic disorder. ECF No. [42] ¶ 108. Jolibois responds that a group at work knew about her EEOC Charge. ECF No. [42] ¶ 108; *see* ECF No. [42-2] 112:15-18. PHT also contends Jolibois did not experience any negative treatment after complaining to PHT administration in March of 2022, and that she did not experience any specific events related to her complaint to the union. ECF No. [42] ¶ 109. Jolibois responds that after she made her complaints, everyone ignored her, and she was forced to take administrative leave. ECF No. [42-2] 128:14-20.

**B. Jolibois' Affidavit**

Under Local Rule 56.1, the opponent to a motion for summary judgment must submit her own statement of material facts, which "shall correspond with the order and with the paragraph numbering scheme used by the movant." S.D. Fla. L.R. 56.1(a). "All material facts set forth in the movant's statement filed and supported as required above will be deemed admitted unless controverted by the opposing party's statement, provided that the Court finds that the movant's statement is supported by evidence in the record." S.D. Fla. L.R. 56.1(c). Further, "Any additional facts that an opponent contends are material to the motion for summary judgment shall be

numbered and placed immediately after the opponent's response to the movant's Statement of Material Facts." S.D. Fla. L.R. 56.1(b)(2)(D).

Here, Jolibois filed a Response to PHT's Statement of Material Facts, but did not file her own. Instead, Jolibois filed a two-page affidavit, which PHT argues is not compliant with Local Rule 56.1 because the affidavit does not set forth any additional facts to defeat the Motion. "A non-conclusory affidavit based on personal knowledge, even if uncorroborated and self-serving, can create a genuine dispute of material fact that defeats summary judgment." *Rodda v. Univ. of Mia.*, 542 F. Supp. 3d 1289, 1295 (S.D. Fla. 2021). The Court finds that Jolibois has complied with Local Rule 56.1 because she responded to PHT's Statement of Material Facts. To the extent Jolibois' affidavit is non-conclusory, the Court will consider it.

In her affidavit, Jolibois asserts that the tone and content of the emails were sarcastic in nature and was a coping mechanism to express her exasperation and to highlight the severity of her situation, not any indication of any actual unfitness for duty. ECF No. [51-1] ¶ 3. She further claims that at no point was she unable to do her work, but that it was just an additional issue with Iduate. *Id.* ¶ 8. PHT disputes all claims and cites its own Statement of Material Facts for support.

**C.  Defendant's Motion**

In its Motion, PHT argues that Jolibois cannot establish a *prima facie* case for her Retaliation claims, for her Race, Color and National Origin Discrimination claims, and for her Disability Discrimination claim. ECF No. [42]. Further, PHT contends that it had a legitimate business reason for Jolibois' claimed adverse employment actions. *Id.* PHT also argues it is entitled to summary judgment on Jolibois' FMLA claims. *Id.* Jolibois responds that there are issues of material fact that preclude summary judgment. ECF No. [51]. PHT replies that Jolibois failed to respond to several issues, and therefore, waived them. ECF No. [55]. PHT further asserts that Jolibois' conclusory allegations do not create a genuine issue of material fact. *Id.*

## II.   LEGAL STANDARD

### A.  Summary Judgment Standard

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citations to materials in the record, including depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). "A factual dispute is 'material' if it would affect the outcome of the suit under the governing law, and 'genuine' if a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

A court views the facts in the light most favorable to the non-moving party, draws "all reasonable inferences in favor of the nonmovant and may not weigh evidence or make credibility determinations[.]'" *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1179 (11th Cir. 2019); *see also Crocker v. Beatty,* 886 F.3d 1132, 1134 (11th Cir. 2018) ("[W]e accept [the non-moving party's] version of the facts as true and draw all reasonable inferences in the light most favorable to him as the non-movant." (citation omitted)). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990) (citation omitted).

### B.  *McDonnell Douglas* Framework

In the absence of direct evidence of discrimination or retaliation, a court applies the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800 (1973). *See Ossmann v. Meredith Corp.*, 82 F.4th 1007, 1014 (11th Cir. 2023) ("The *McDonnell Douglas* burden-shifting framework generally applies to discrimination claims based on circumstantial evidence."); *Tolar v. Bradley Arant Boult Commings, LLP*, 997 F.3d 1280, 1289 (11th Cir. 2021) (retaliation claims based on circumstantial evidence are "ordinarily analyzed under the *McDonnell Douglas* burden-shifting framework").

The Supreme Court established the *McDonnell Douglas* framework "to allow plaintiffs who lack direct evidence of discrimination to nonetheless obtain fair scrutiny of their claims that they have been discriminated against in the workplace—that is, as a delicate balance between employers' rights to make legitimate personnel decisions and employees' rights to be free from those discriminatory practices[.]" *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1233 (11th Cir. 2019) (Rosenbaum, J., concurring) (internal quotation marks omitted). "Importantly, throughout this entire process, the ultimate burden of persuasion remains on the employee." *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1135 (11th Cir. 2020) (quoting *Sims v. MVM, Inc.*, 704 F.3d 1327, 1333 (11th Cir. 2013)); *see also E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1273 (11th Cir. 2002).

### i.  Retaliation Under *McDonnell Douglas*

To prevail on a retaliation claim under the *McDonnell Douglas* framework, a plaintiff must present evidence that (1) she engaged in a statutorily protected activity, (2) she suffered a materially adverse action, and (3) there was a causal connection between the two events. *See Fulford v. Miami-Dade County*, 219 F. Supp. 3d 1248, 1255 (S.D. Fla. 2016); *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008). If the plaintiff establishes her *prima facie*

case, the burden shifts to the defendant to come forward with a legitimate reason for the employment action to negate an inference of retaliation. *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1311 (11th Cir. 2016). If the employer advances legitimate reasons for the adverse employment action, the burden shifts back to the employee to demonstrate, by a preponderance of the evidence, that the employer's reasons are pretextual. *Id.*

### ii.  Discrimination Under *McDonnell Douglas*

To make out a *prima facie* case of racial discrimination, a plaintiff must show that: (1) she belongs to a protected class; (2) she was qualified to do the job; (3) she was subjected to an adverse employment action; and (4) her employer treated similarly situated employees outside her class more favorably. *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). "Next, the defendant must articulate a legitimate, non-discriminatory reason for the challenged employment action. If the defendant articulates one or more such reasons, the plaintiff is afforded an opportunity to show that the employer's stated reason is a pretext for discrimination." *Sims v. MVM, Inc.*, 704 F.3d 1327, 1332 (11th Cir. 2013) (citations omitted).

A plaintiff's burden to establish a *prima facie* case "is not onerous" and the plaintiff must simply establish discriminatory treatment by a preponderance of the evidence. *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981). Similarly, "[t]he employer's initial showing, just as the plaintiff's, is a low bar to hurdle." *Flowers v. Troup Cnty., Ga., Sch. Dist.*, 803 F.3d 1327, 1336 (11th Cir. 2015). In contrast, to establish pretext and avoid summary judgment at the next step of the *McDonnell Douglas* framework, the plaintiff "must present 'significant probative evidence[.]'" *Owens v. Governor's Off. of Student Achievement*, 52 F.4th 1327, 1338 (11th Cir. 2022) (quoting *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996)). At that stage, "the inquiry 'proceeds to a new level of specificity,' in which the plaintiff must show that the proffered reason really is a pretext for unlawful discrimination." *Joe's Stone Crabs, Inc.*, 296

F.3d at 1273. To establish pretext, a plaintiff can reveal "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)).

## III.   DISCUSSION

### A.   Claims Under § 1981

PHT contends that § 1981 "cannot be used to sue state actors or entities." *Lyons v. Miami-Dade County*, 791 F. Supp. 2d 1221, 1226 (S.D. Fla. 2011). Jolibois does not dispute, nor even address this issue. "[A] litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. The court will not do his research for him." *Melford v. Kahane & Assocs.*, 371 F. Supp. 3d 1116, 1126 n.4 (S.D. Fla. 2019) (internal quotations and citation omitted).

Nevertheless, the Court finds that PHT is correct. "Section 1983 is the 'exclusive federal remedy for violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor or entity.'" *Lyons*, 791 F. Supp. 2d at 1226 (quoting *Cason Enter., Inc. v. Metropolitan Dade County*, 20 F. Supp. 2d 1331, 1337, n.5 (S.D. Fla. 1998)). Accordingly, PHT is entitled to summary judgment on Counts IV and IX to the extent that Jolibois seeks relief under § 1981.

### B.   Retaliation Under Title VII

Counts I-IV assert theories of retaliation under Title VII, the FCRA, the ADA, and § 1983. Title VII and the FCRA prohibit an employer from retaliating against an employee for opposing an unlawful employment practice. 42 U.S.C. § 2000e-3(a); Fla. Stat. § 760.10(7). The ADA also prohibits retaliation. 42 U.S.C. § 12203(a). Claims for retaliation under Title VII, the FCRA, the ADA, and § 1983 generally have the same elements of proof and may be analyzed together. *See*

*Jones v. Gadsgen Cnty. Schs.*, 758 F. App'x 722, 725 (11th Cir. 2008); *Russell v. City of Tampa*, 737 F. App'x 922, 923 (11th Cir. 2018).

PHT contends that it is entitled to summary judgment on Counts I-IV of the Amended Complaint because Jolibois is unable to establish any element set forth in *McDonnell Douglas*. ECF No. [43]. PHT further argues that summary judgment is warranted because Jolibois failed to exhaust her administrative remedies.[3] *Id.* Jolibois responds that deposition testimony refutes this claim, because after Jolibois raised concerns about discriminatory treatment, Iduate escalated her hostility and suppressed Jolibois' complaints. ECF No. [51]. PHT replies that Jolibois fails to allege with specificity what concerns were raised, to whom these concerns were raised to, whether Iduate was made aware of these concerns, and when these concerns were raised. ECF No. [55].

### i.   Engaged in a Statutorily Protected Activity

Here, Jolibois asserts two purported protected activities: (1) in 2019, when Plaintiff began to complain about discrimination to her supervisors, manager, Union, and human resources; and (2) while still employed, Plaintiff filed her EEOC Charge. ECF No. [26]. Title VII's retaliation provision protects certain kinds of activity. Under the opposition clause, an employer may not retaliate against an employee because the employee "has opposed any practice made an unlawful employment practice[.]" 42 U.S.C. § 2000e–3 (a). Under the participation clause, an employer may not retaliate against an employee because the employee "has made a charge, testified, assisted,

---

[3] The purpose of this exhaustion requirement "is that the [EEOC] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir.1983). With this purpose in mind, courts have allowed judicial claims that "amplify, clarify, or more clearly focus the allegations in the [administrative] complaint," but not those that involve "allegations of new acts of discrimination." *Gregory v. Ga. Dept. of Human Res.*, 355 F.3d 1277, 1279-80 (11th Cir. 2004). Nevertheless, the Court does not strictly interpret the scope of the administrative charge. Here, liberally construing Jolibois' EEOC Charge, Jolibois outlined the events now set forth before this Court. *See* ECF No. [42-2] at 222. Thus, the Court rejects PHT's point on this matter.

or participated in any manner in an investigation, proceeding, or hearing[.]" *Id.*

### a. Complaints

PHT argues that Jolibois' complaints related to her fitness for duty exam are not protected activity under the opposition clause either, because the fitness for duty exam was job-related and consistent with a business necessity. Jolibois does not address whether she engaged in protected activity but argues that the fitness for duty exam was baseless.

As an initial matter, the participation clause is inapplicable, because "at a minimum, some employee must file a charge with the EEOC (or its designated representative) or otherwise instigate proceedings under the statute for the conduct to come under the participation clause." *EEOC v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1175 n.2 (11th Cir. 2000). To establish protected activity under the opposition clause, a plaintiff must show that she had a good faith and objectively reasonable belief that her employer was engaged in unlawful employment practices. *Anduze v. Fla. Atl. Univ.*, 151 F. App'x 875, 878 (11th Cir. 2005). "A plaintiff must not only show that he *subjectively* (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was *objectively* reasonable in light of the facts and record presented." *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1987) (emphasis in original). This does not require that the plaintiff prove that the employment practice was unlawful, but "the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable." *Id.*

Generally, "[t]he making of informal complaints or the use of an internal grievance system is protected conduct under the opposition clause." *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1144 (11th Cir. 2020); *see also Furcron*, 843 F.3d at 1311 ("Title VII's protections are not limited to individuals who file formal complaints, but extend to those who voice informal complaints as well."). Nevertheless, "the employee must, at the very least, communicate her belief

20

that discrimination is occurring to the employer. It is not enough for the employee merely to complain about a certain policy or certain behavior of co-workers and rely on the employer to infer that discrimination has occurred." *Murphy v. City of Aventura*, 616 F. Supp. 2d 1267, 1281 (S.D. Fla. 2009) (quoting *Webb v. R & B Holding Co., Inc.*, 992 F. Supp. 1382, 1389 (S.D. Fla. 1998)).

Here, the record is devoid of any evidence of Jolibois' complaints pertaining to an unlawful employment practice. It is undisputed that Jolibois made complaints to the Union related to the fitness for duty exam.[4] ECF No. [42] ¶ 107; ECF No. [52] ¶ 107. Further, Jolibois did make complaints to Ortiz and to HR about Iduate. *See* ECF No. [42-2] at 85:3-18; 87:1-4; 89:5-7. However, none of Jolibois' complaints "communicate[d] her belief that discrimination is occurring[.]" *Murphy*, 616 F. Supp. 2d at 1281. At one point in her deposition, Jolibois states that "at the beginning I was overwhelmed. I did not know what to do to be able to -- to do my work at the Transfer Center. I sent an email to [Ortiz]. I told her that [Iduate] was discriminating me. [Ortiz] was treating me this way." ECF No. [42-2] 85:3-6. However, when Jolibois reads the message, there is no mention of discrimination. *Id.* 86:10-25. "To survive summary judgment, the nonmoving party bearing the ultimate burden of proof at trial must come forward with evidence sufficient to withstand a directed verdict motion." *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004). Jolibois has failed to set forth any evidence sufficient to create a genuine dispute as to whether her complaints constituted protected activity.

### b. The EEOC Charge

The participation clause of Title VII "protects proceedings and activities which occur in conjunction with or after the filing of a formal charge with the EEOC; it does not include

---

[4] The record is unclear what complaints Jolibois made in reference to the fitness for duty exam. To the extent that Jolibois's complaints regarding the fitness for duty exam do constitute protected activity, as the Court explains *supra*, PHT had a legitimate business reason for the exam, and Jolibois has not set forth any evidence to establish pretext. *See Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1311 (11th Cir. 2016).

participating in an employer's internal, in-house investigation, conducted apart from a formal charge with the EEOC." *EEOC v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000). Jolibois filed an EEOC Charge on June 15, 2022, based on her national origin, race, and disability after being sent for a fitness for duty exam on March 4, 2022. ECF No. [42] ¶ 103; ECF No. [42-2]; ECF No. [52] ¶ 103. PHT contends that because Jolibois had not filed her EEOC Charge at the time of her fitness for duty exam, the EEOC Charge could not be the basis for protected activity. ECF No. [42] at 8.

PHT relies on *Anduze v. Fla. Atlantic University*, 151 F. App'x 875, 877 (11th Cir. 2005), where the Eleventh Circuit concluded that filing an EEOC Charge did not constitute a protected activity because the EEOC Charge was filed a month after the alleged retaliation. PHT is correct – to the extent that Jolibois' retaliation claim is premised on her fitness for duty exam in March 2022, Jolibois did not engage in protected activity by filing her EEOC Charge, because she filed the EEOC Charge two months after the exam. *See Anduze*, 151 F. App'x at 877 ("[The plaintiff] could not, as a matter of law, have engaged in protected activity under the Participation Clause at the time [of the adverse action], because she had not yet filed a charge with the EEOC."); ECF No. [42] ¶ 103; ECF No. [52] ¶ 103. Nevertheless, Jolibois asserts that she was constructively terminated less than six months after filing her EEOC Charge. *See* ECF No. [52] ¶ 101-02. Thus, the EEOC Charge satisfies the first prong of a *prima facie* retaliation claim to the extent that Jolibois claims PHT retaliated against her *after* filing the EEOC Charge. *See Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008) ("The filing of an EEOC claim is a 'statutorily protected activity.").

### ii.  Materially Adverse Action

Courts have consistently held that "[a]n employment action is considered 'adverse' only if it results in some tangible, negative effect on the plaintiff's employment." *Johnson v. Fla. Dep't*

*of Corr.*, 829 F. App'x 889, 893 (11th Cir. 2020) (quoting *Shotz v. City of Plantation*, 344 F.3d 1161, 1181 (11th Cir. 2003)). The test is whether a reasonable employee would find "the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination. . . . [T]he significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68-69 (2006); *Johnson v. Potter*, 732 F. Supp. 2d 1264, 1281 (M.D. Fla. 2010) (emphasizing that "[t]he adverse action . . . must be materially adverse").

Having concluded that only the EEOC Charge constitutes a statutorily protected activity, the Court must now decide whether a genuine issue of material fact exists regarding Jolibois' constructive discharge claim. PHT contends no reasonable juror could find in Jolibois' favor on her constructive discharge claim because Jolibois admits to voluntarily resigning. ECF No. [42] at 10. Further, PHT argues that Jolibois' allegations related to being given the "silent treatment" and criticism from Iduate do not rise to the level of constructive discharge. *Id.* at 10-11. Jolibois responds that being subjected to the fitness for duty exam was humiliating and unwarranted, and her concerns were constantly ignored. ECF No. [51] at 15-17. Jolibois contends that the cumulative impact of discriminatory and retaliatory practices indicates that Jolibois was pushed out. *Id.*

"A constructive discharge occurs when a discriminatory employer imposes working conditions that are 'so intolerable that a reasonable person in [the employee's] position would have been compelled to resign.'" *Fitz v. Pugmire Lincoln-Mercury*, 348 F.3d 974, 977 (11th Cir. 2003) (quoting *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir.1997)); *see also Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1231 (11th Cir. 2001) ("To prove constructive discharge, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than

the minimum required to prove a hostile working environment." (quoting *Landgraf v. USI Film Prods.*, 968 F.2d 427, 430 (5th Cir. 1992))).

Here, PHT highlights that Jolibois testified that her decision to resign from PHT was voluntarily and that she "decided to do it." ECF No. [42] ¶ 12-14; ECF No. [42-2] 121:12-14. As both parties point out, throughout her deposition, Jolibois testified that Iduate nitpicked her work and treated her poorly, and Ortiz and Iduate gave her the "silent treatment." ECF No. [42] ¶ 105; ECF No. [52] ¶ 105; ECF No. [42-2] 126:1-15. In regard to this, Jolibois stated that "I was ignored in the department, [Ortiz] and [Iduate]. . . . [T]hey get into the room, they see me for the first time; nobody say anything to me. They get out. . . . they gave me a silent treatment." ECF No. [42-2] 126:4-15. Further, Jolibois highlights other portions of her deposition, where she testified that the fitness for duty exam humiliated her, and she felt as if she was pushed out of PHT. *See* ECF No. [42-2] 59:1-25; 66:1-25; 68:14-25; 69:1-15.

Even viewed in the light most favorable to Jolibois, those isolated instances are insufficient to create a genuine dispute that her working conditions were so intolerable that a reasonable person would feel compelled to resign. *Compare Poole*, 129 F.3d at 553 (determining that evidence was sufficient to sustain employee's constructive discharge claim against summary judgment where employee was "[s]tripped of all responsibility, given only a chair and no desk, and isolated from conversations with other workers"), *with Hipp*, 252 F.3d at 1237 (determining that evidence was insufficient to sustain employee's constructive discharge claim where the employee alleged he was verbally attacked on multiple incidents, told that he was doing a "lousy job," and that he was a terrible district manager) *and Medearis v. CVS Pharm., Inc.*, 646 F. App'x 891, 898-99 (11th Cir. 2016) (determining that evidence was insufficient to sustain employee's constructive discharge claim where the employee was told he would be fired within a year because "Title VII does not

protect employees from stressful workplace environments"). Thus, the Court finds that no genuine issue of material fact exists as to whether Jolibois suffered a materially adverse action. Accordingly, PHT is entitled to summary judgment on Counts I, II, III, and IV.

### C. FMLA Retaliation

Count XIV asserts PHT retaliated against Jolibois for exercising an FMLA right by arbitrarily denying Jolibois time-off, requiring Jolibois to submit to a fitness for duty exam, and eventually constructively discharging Jolibois. PHT argues that (1) Jolibois' denial of non-FMLA time-off does not constitute an adverse employment action, and (2) no reasonable jury could find that Iduate or anyone else at PHT had notice or knowledge of Jolibois' FMLA protection or any involvement in the FMLA approval process. ECF No. [43] at 12. Jolibois treats her FMLA interference and retaliation claims as one, but argues she barely used her FMLA because she was afraid of Iduate. ECF No. [51] at 8.

To prevail on an FMLA retaliation claim, "an employee must demonstrate that his employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right." *Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1207 (11th Cir. 2001). Different from an FMLA interference claim, a plaintiff must prove that her employer's actions were "motivated by an impermissible retaliatory or discriminatory animus." *Id.* (internal citation omitted). The same burden-shifting framework set forth in *McDonnell Douglas* applies. *Id.*

The Court finds that there is no genuine issue of material fact as to whether Jolibois experienced an adverse employment action after exercising her FMLA rights. At the outset, PHT is correct that the denial of non-FMLA time-off is not an adverse employment action. *See Barnett v. Athens Reg'l Med. Ctr., Inc.*, 550 F. App'x 711, 715 (11th Cir. 2013) (concluding that the denial of a vacation request was not an adverse employment action because it "would not have deterred

Case No. 23-cv-24442-BLOOM/Torres

a reasonable employee from making, or supporting, a discrimination charge"). However, as Jolibois highlights, there was at least one instance where Jolibois claims that she was denied FMLA leave:

> Q. Did you ever explicitly ask for FMLA time off for a medical procedure or appointment and were told by [Iduate] or another supervisor at PHT that you were not allowed to take your FMLA time off and you had to come back to work?
>
> A. Yes. I was told that I cannot have the surgery, because there was other people that had vacation approved already.

ECF No. [42-2] 152:23-25, 153:1-4.

It is unclear whether Jolibois claims that the denial of FMLA leave is the adverse action she suffered, or if, as a result of taking FMLA leave, she was required to submit to the fitness for duty exam and eventually constructively discharged. The Court notes that "[w]hen a party fails to respond to an argument or otherwise address a claim, the Court deems such an argument or claim abandoned." *Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (Mem) (11th Cir. 2014); *see also Melford v. Kahane & Assocs.*, 371 F. Supp. 3d 1116, 1126 n.4 (S.D. Fla. 2019).

However, even if Jolibois experienced an adverse employment action, the record is devoid of any evidence to demonstrate that the fitness for duty exam, or constructive discharge, were causally related to her intermittent FMLA leave. "The burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action. . . . But mere temporal proximity, without more, must be 'very close.'" *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (internal citations omitted). Alternatively, "'[t]he causal connection element is satisfied if a plaintiff shows that the protected activity and adverse action were 'not wholly unrelated.'" *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1234 (11th Cir. 2010) (quoting *Brungart v. BellSouth Telecomm., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000)). A plaintiff can show that the two events are not wholly unrelated if "the decision maker

was aware of the protected conduct at the time of the adverse employment action." *Id.* There must also be temporal proximity between the decision maker's awareness of the protected conduct and the adverse employment action.

However, no temporal proximity exists between Jolibois' exercise of her FMLA rights and the fitness for duty exam or constructive discharge. While the Court acknowledges that Jolibois was approved for intermittent leave and took her FMLA leave on a continuous basis, there are no facts in the record explaining when Jolibois took intermittent FMLA leave, and causally connecting such leave and the purported adverse action.[5] Further, the record is devoid of any retaliatory motive or discriminatory animus because Jolibois exercised her FMLA rights. *See Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1207 (11th Cir. 2001). Therefore, the Court concludes that no reasonable jury could conclude that a *prima facie* case of FMLA retaliation exists.

### D. Discrimination

Counts V-X of the Amended Complaint assert claims for Discrimination under Title VII, § 1983, and the FRCA, based on Jolibois' race, color, and national origin. ECF No. [26]. Counts XI-XII of the Amended Complaint asserts claims for Discrimination under the FRCA and ADA based on Jolibois' disability. *Id.* Both claims allege that PHT discriminated against Jolibois by (1) arbitrarily denying her time-off, (2) out casting her, and (3) requiring she submit to the fitness for duty exam. PHT argues that Jolibois cannot establish a *prima facie* case for her discrimination claims based on her race, color, and national origin, or her discrimination claim based on her

---

[5] The only time identified by Jolibois where she took FMLA leave was for her eye surgeries, which she stated were in 2021. ECF No. [42-2] 81:23-25. Clearly, there is no temporal proximity between FMLA leave taken in 2021, and her fitness for duty exam in March of 2022, and eventual resignation in November of 2022. *See McAlpin v. Sneads*, 61 F.4th 916, 932 (11th Cir. 2023) ("[M]ere temporal proximity, without more, must be 'very close.'" (quoting *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007))).

disability. ECF No. [43] at 12-16. PHT further contends that even if Jolibois can establish her *prima face* case, PHT has legitimate business reasons for the adverse actions experienced. *Id.* at 16-19. Jolibois responds that the fitness for duty exam was not only unnecessary, but also discriminatory. ECF No. [51] at 13. Jolibois also argues that she was always rejected for her time-off requests, and it was clear that she was treated differently from the other nurses. *Id.* at 5.

### i. Discrimination Based on Race, Color, and National Origin

Similar to a retaliation claim, a plaintiff can show discrimination by presenting direct or circumstantial evidence. Jolibois presents no direct evidence of discrimination. Therefore, the Court applies the *McDonnell Douglas* framework. The elements for discrimination claims brought under the FCRA, Title VII, and § 1983 are identical, and can therefore be brought together. *See Abel v. Duddy*, 210 F.3d 1334, 1338 (11th Cir. 2000); *Giles v. Daytona State Coll.*, 542 F. App'x 869, 872 (11th Cir. 2013). In some contexts, "national origin discrimination is so closely related to racial discrimination as to be indistinguishable." *Bullard v. OMI Ga., Inc.*, 640 F.2d 632, 634 (5th Cir. 1981) (internal quotation marks omitted) (quoting *Spiess v. C. Itoh & Co.*, 408 F. Supp. 916, 928 n.17 (S.D. Tex. 1976)). That is the case here, and thus, the Court will analyze Jolibois' race, color, and national origin claims together.

PHT argues that summary judgment is warranted because Jolibois cannot provide a proper comparator to prove her *prima facie* case. ECF No. [43]. Further, PHT contends that even if Jolibois can meet the elements of a *prima facie* case, it had a legitimate business reason to require that she submit to a fitness for duty exam, and Jolibois cannot set forth any evidence to establish pretext. *Id.* Jolibois responds that the fitness for duty exam was baseless and was pretext for further discrimination. ECF No. [51].

The Court finds that even if Jolibois can set forth a *prima face* case of discrimination, no reasonable jury could conclude that PHT did not have a legitimate, nondiscriminatory reason to

require that Jolibois submit to a fitness for duty exam, nor could a reasonable jury find that PHT's reasons were pretextual. If the plaintiff makes out a *prima facie* case, the defendant must proffer a legitimate, nondiscriminatory reason for its actions. "The defendant need not persuade the court that it was actually motivated by the proffered reason, but need only present evidence raising a genuine issue of fact as to whether it discriminated against the plaintiff." *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010). The employer's burden "is a low bar to hurdle." *Flowers v. Troup Cnty., Ga., Sch. Dist.*, 803 F.3d 1327, 1336 (11th Cir. 2015).

The record reflects that Iduate received multiple emails from Jolibois where Jolibois stated, "I am sorry Ma'am for being stupid and ignorant," "I don't think there is anything else the department can do to help me get better," "the tension is too high for me," and "I don't know if I can handle my life in the transfer center until April." ECF No. [42-3] at 8-10. Shortly after the last email, one of Jolibois' colleagues advised Iduate that Jolibois said, "I should have died before coming to the transfer center today." *Id.* ¶ 22. It is then undisputed that after consulting with her superior, Ortiz, and PHT's Office of Employee/Labor Relations & Workforce Compliance, it was determined by PHT's Office of Employee/Labor Relations & Workforce Compliance that Jolibois should be sent for a fitness for duty exam. ECF No. [42-2] ¶ 55; ECF No. [52] ¶ 55. Jolibois' argument that her emails were sarcastic, and that the emails were an illegitimate reason to subject her to a fitness for duty exam is unpersuasive. The Court finds that PHT has established it had a legitimate business reason for requiring that Jolibois submit to a fitness for duty exam.

Because the Court concludes that PHT set forth a legitimate, nondiscriminatory reason, the burden shifts back to Jolibois to consider whether a reasonable jury could find such reason was pretext for discrimination. To establish pretext and avoid summary judgment, the plaintiff "must present 'significant probative evidence[.]'" *Owens v. Governor's Off. of Student Achievement*, 52

F.4th 1327, 1338 (11th Cir. 2022). At this stage, "the inquiry 'proceeds to a new level of specificity,' in which the plaintiff must show that the proffered reason really is a pretext for unlawful discrimination." *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1273 (11th Cir. 2002). More specifically, "[i]f a jury reasonably could infer from the evidence presented that the employer's legitimate justification is pretextual, the question becomes whether the evidence, considered in the light most favorable to the plaintiff, yields the reasonable inference that the employer engaged in the alleged discrimination." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1326 (11th Cir. 2011). To establish pretext, a plaintiff can reveal "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)).

Here, Jolibois does not address this issue. *Melford v. Kahane & Assocs.*, 371 F. Supp. 3d 1116, 1126 n.4 (S.D. Fla. 2019) ("Generally, a litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. The court will not do his research for him." (internal quotations and citation omitted)). Nevertheless, the Court determines that no reasonable jury could infer from the evidence proffered that PHT's reason to require Jolibois submit to a fitness for duty exam was pretext for discrimination. The only evidence Jolibois submits is her own, subjective interpretation of her emails to Iduate. *See* ECF No. [51-1]. In the affidavit submitted with her Response, Jolibois claims that the "tone and content of these emails were sarcastic in nature," and that "[t]he sarcastic tone in my emails was a coping mechanism . . . not an indication of any actual unfitness for duty." *Id.* at 1.

Disputing an employer's legitimate business reason for an adverse action is insufficient to establish pretext. *See, e.g.*, *Short v. Mando Am. Corp.*, 601 F. App'x 865, 874 (11th Cir. 2015) (concluding that a plaintiff could not establish pretext by quarreling with the employer's business judgment and reasons); *Holmes v. Jefferson Cnty. Sch. Dist.*, 657 F. App'x 874, 876 (11th Cir. 2016) ("A reason is not pretextual unless the plaintiff shows it is false, and that discrimination was the true reason for the action against the employee. The employee must confront the employer's seemingly legitimate reason 'head on and rebut it.'" (internal citation omitted)). Even if PHT's interpretation of Jolibois' emails was misguided, Jolibois has failed to present any other evidence to indicate that discrimination was the motivation for the fitness for duty exam. "[C]onclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well-supported motion for summary judgment." *Thomas v. Dade Cnty. Pub. Tr.*, 177 F. Supp. 2d 1283, 1288 (S.D. Fla. 2001). Thus, Jolibois' subjective belief that her emails were sarcastic does not support a finding of pretext.

Jolibois' contention that the fitness for duty exam was baseless is likewise insufficient to establish pretext. "Deviation from a policy or procedure may be evidence of pretext, if the deviation occurs in a discriminatory manner." *Loyle v. Mantua Mfg. Co.*, No. 808CV169-T-17AEP, 2010 WL 447789, at *10 (M.D. Fla. Jan. 25, 2010) (citing *Brown v. Am. Honda Motor Co.*, 939 F.2d 946, 952 (11th Cir. 1991)). Here, Jolibois merely argues that "[t]he timing and context of the exam suggest it was a pretext for further discrimination/retaliation." ECF No. [51] 14-15. Jolibois fails to point to any evidence in the record that would support this assertion or create a genuine dispute as to whether the exam was administered for discriminatory reasons. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990) ("Mere conclusory allegations and assertions will not suffice."); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003)

("[J]udges are not like pigs, hunting for truffles buried in briefs." (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991))). As such, PHT is entitled to summary judgment on this matter.

### ii.  Discrimination Based on Disability

The ADA bars employers from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). To prevail on an ADA discrimination claim, a plaintiff must establish (1) she has a disability; (2) she is a qualified individual under the ADA; and (3) the employer discriminated against her "on the basis of disability." *Akridge v. Alfa Ins. Cos.*, 93 F.4th 1181, 1191 (11th Cir. 2024). PHT asserts there is no support in the record to sustain Jolibois' conclusory allegations that she is disabled and that she was discriminated against on the basis of her disability. ECF No. [43] at 14-16. Jolibois responds that being sent for the fitness for duty exam was related to her chronic illness, and a way to identify a disability. ECF No. [51] at 10-11.

To prove she has a "disability," a plaintiff must show that: "(1) she suffers from a physical or mental impairment that substantially limits at least one of her major life activities, (2) she has a record of such impairment, or (3) she has been regarded as having such impairment." *Todd v. Fayette Cnty. Sch. Dist.*, 998 F.3d 1203, 1215-16 (11th Cir. 2021) (internal quotation marks omitted). A plaintiff is a "qualified individual" if she "with or without reasonable accommodation, can perform the essential functions of the employment position that [she] holds or desires." 42 U.S.C. § 12111(8).

The parties cite to the same portions of the record to argue whether Jolibois has a disability. ECF No. [42] ¶¶ 89-96; ECF No. [52] ¶¶ 89-96. In her deposition, Jolibois stated "[n]o, I don't have a disability. I have a disorder. I have a chronic disorder that I have to live with it, but that – that does not stop me from doing anything." ECF No. [42-2] 92:13-16. In response to the question "[d]id anyone – your supervisors, anyone at PHT tell you that they thought that you had a disability?" Jolibois answered "no." ECF No. [42-2] 92:24-25; 93:1. Jolibois was officially

diagnosed ankylosing spondylitis in 2016. ECF No. [42-2] 94:10-12. Further, Jolibois was asked whether the pain was controlled by medications:

> Q. Do you believe that all of the illnesses or disorders that you just mentioned between the depression, the chronic pain disorder, your -- your low thyroid issues, and I believe there's a couple more that you just mentioned, do you believe those are all well controlled on the medication that you are taking?
>
> A. Yes, they have to be controlled. I don't go . . . every time, but I have to -- to see my rheumatologist every three months. I have to see my primary care physician twice a year. And I have to see my ophthalmologist twice a year. And also I may have some refill. So if the medication -- if I start having uncontrolled pain with the medication that I have, my -- the only thing that I have to do is to go to my rheumatologist, and they -- they will change the medication or give me a better -- give me a higher dose.
>
> Q. Is there anything specific -- any specific activity that you are unable to do as a result of your illnesses?
>
> A. No. I don't know in the future, but for now, I am sitting talking to you, but I don't have pain that will stop me from -- from doing activities that I have to do.

ECF No. [42-2] 95:21-25; 96:1-14.

The Court finds that drawing every inference in the Plaintiff's favor, Jolibois admits being able to perform "major life activities," and no one has regarded her as having a disability. Jolibois claims, though, that she was required to submit to the fitness for duty exam because of her disability. Other than her subjective belief that this was the reason, Jolibois presents no evidence to support her contention. *See Cash v. Smith*, 231 F.3d 1301, 1306-07 (11th Cir. 2000) (concluding that plaintiff failed to establish *prima facie* case because the plaintiff "did not present any evidence that she suffered from or was regarded as having a disability as that term is defined by the ADA"); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). Thus, Jolibois' Discrimination claims under the ADA and FCRA fail as a matter of law.

### E.  FMLA Interference

To bring a claim of FMLA Interference, a plaintiff must satisfy three elements:

> First, she must show that she was entitled to a benefit under the FMLA. *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1191 (11th Cir. 2015). Second, she must show that her employer denied her that benefit. *Id.* And finally, she must "demonstrate harm, or prejudice, resulting from the employer's interference with her exercise (or attempted exercise) of an FMLA benefit." *Ramji v. Hosp. Housekeeping Sys., LLC*, 992 F.3d 1233, 1245 (11th Cir. 2021).

*Graves v. Brandstar, Inc.*, 67 F.4th 1117, 1121 (11th Cir. 2023).

The plaintiff does not have to allege that her employer intended to deny her right to FMLA leave because "the employer's motives are irrelevant." *Jones v. Gulf Coast Health Care of Del., LLC*, 854 F.3d 1261, 1267 (11th Cir. 2017) (quoting *Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199. 1208 (11th Cir. 2001)). "[U]nlawful employer interference includes not only refusing to authorize FMLA leave, but also 'discouraging an employee from using such leave.'" *Diamond v. Hospice of Fla. Keys, Inc.* 677 Fed. App'x 586, 592 (11th Cir. 2017) (quoting 29 C.F.R. § 825.220(b)). However, "the FMLA does not create an absolute right to be left alone" while the employee is on FMLA leave. *Simmons v. Indian Rivers Mental Health Ctr.*, 652 Fed. App'x 809, 819 (11th Cir. 2016).

PHT argues that it is entitled to summary judgment on Jolibois' FMLA Interference claim for four reasons: (1) Jolibois has only alleged that she was prevented from utilizing her personal leave time, not FMLA time-off; (2) Jolibois has "testifie[d] that she has never been denied FMLA leave for a medical procedure"; (3) a third party administrator, not Jolibois, was responsible for all FMLA determinations; (4) Jolibois "is unable to establish that she was damaged by any alleged interference because she was aware of her FMLA rights and received all the leave she properly requested." ECF No. [43] at 19-20.

In support of its argument that Jolibois "has made it clear that her contention with PHT results from her claimed inability to utilize her personal leave time when she felt she needed it – not job protected FMLA time-off," PHT cites portions of Jolibois' Amended Complaint and Statement of Facts in which she appears to refer to non-FMLA vacation time. ECF No. [43] at 19 (citing ECF No. [26] ¶ 262; ECF No. [52] ¶ 63). Regardless of whether there are some instances in the record in which Jolibois conflates vacation time with FMLA time, Jolibois also alleges that she was told she was "not allowed" to take FMLA time-off. *See* ECF No. [51] at 9 (quoting ECF No. [42-2] at 151:23-152:4). As Jolibois notes, during her deposition, she was asked "[d]id you ever explicitly ask for FMLA time off for a medical procedure or appointment and were told by [Iduate] or another supervisor at PHT that you were not allowed to take your FMLA time off and you had to come back to work" to which Jolibois responded, "Yes. I was told that I cannot have the surgery, because there was other people that had vacation approved already." *Id.* (quoting ECF No. [42-2] at 151:23-152:4).

Although, as PHT points out, Jolibois may have made some contradictory statements in her deposition, those contradictions present a question of credibility, an issue which is not proper for the Court to decide on a motion for summary judgment. *Kassa v. Synovus Fin. Corp.*, 800 F. App'x 804, 808 (11th Cir. 2020). "In deciding a motion for summary judgment, the district court is precluded from making credibility determinations . . . [and] must instead view the record and draw all reasonable inferences in favor of the non-moving party." *Id.* Specifically "'[v]ariations in a witness's testimony . . . create an issue of credibility' that must be resolved by the trier of fact." *Id.* (quoting *Tippens v. Celotex Corp.*, 805 F.2d 949, 954 (11th Cir. 1986)).

PHT further argues that it should be granted summary judgment on Jolibois' FMLA Interference claim because, even if Jolibois was denied FMLA leave, the third-party administrator,

not PHT, was responsible for the decision. ECF No. [43] at 20. However, as mentioned above, Jolibois does not solely allege that the FMLA interference stemmed from the third-party administrator's denial of her requested FMLA leave. Indeed, Jolibois claims that "I was told that I cannot have the surgery[.]" ECF No. [42-2] at 152:23-24; 153:1-4. This presents a genuine issue of material fact as to who was responsible for any FMLA denials. ECF No. [43] at 20. PHT responds that "[r]ead in the context of her deposition testimony, the reason for these FMLA denials had nothing to do with PHT but were caused by Jolibois' own errors," however, making such a determination would constitute a finding of fact where there appears to be a genuine dispute. ECF No. [55] at 9.

To further support this contention, PHT cites to the portion of Jolibois' testimony where she states "[Iduate] does not decide about FMLA, if you can have FMLA or if you cannot have FMLA[,]" but omits the end of the statement in which Jolibois states, "[y]ou don't want to take an FMLA without your manager's permission, authorization, because she has to replace you, and she has to . . . make sure that the . . . work is done after you." *Id.* (quoting ECF No. [42-2] at 155:11-19). This would suggest that even if Iduate was not formally involved in the FMLA determination process, Jolibois may have been inhibited from seeking the leave to which she would otherwise be entitled. This factual dispute must be left to the jury, not the Court.

Lastly, PHT states that even if Jolibois could establish that PHT denied her FMLA benefits, Jolibois "is unable to establish that she was damaged by this alleged interference because she was aware of her FMLA rights and received all the leave she properly requested." *Id.* PHT cites to the portion of Jolibois' testimony in which, in response to the question, "[d]id you ever have any of your FMLA requests that you submitted on time with all of the right documentation . . . denied" Jolibois said "[n]o." *Id.* (quoting ECF No. [42-2] at 146:9-12). However, Jolibois cites to portions

of the deposition in her Statement of Undisputed Facts that appear to contradict this statement. ECF No. [52] ¶ 75. Specifically, Jolibois appears to state that after having eye surgery, she received approval for FMLA leave and "explained to them that . . . my eyes [are] not ready to work on the computer. They told me that I already come back to work one day. The FMLA is not valid anymore." ECF No. [42-2] at 74:19-75:16. This presents a genuine dispute over a material fact as to whether she was prevented from exercising the FMLA leave to which she was entitled. To the extent that this inconsistency may speak to Jolibois' credibility, that determination is not properly made on a motion for summary judgment. *Kassa*, 800 F. App'x at 808. Therefore, PHT's motion for summary judgment on the FMLA Interference claim is denied.

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.  PHT's Motion for Summary Judgment, **ECF No. [43]**, is **GRANTED IN PART** and **DENIED IN PART**.

2.  PHT is entitled to summary judgment on the following Counts:

    a.  Retaliation under Title VII, 42 U.S.C. § 2000e-3(a) (Count I)

    b.  Retaliation under FCRA § 760.10(7) (Count II)

    c.  Retaliation under ADA (Count III)

    d.  Retaliation under § 1981 and § 1983 (Count IV)

    e.  Race and Color Discrimination under Title VII (Count V)

    f.  Race and Color Discrimination under § 1981 and § 1983 (Count VI)

    g.  Race and Color Discrimination under FCRA (Count VII)

    h.  National Origin Discrimination under Title VII (Count VIII)

    i.  National Origin Discrimination under § 1981 and § 1983 (Count IX)

    j.  National Origin Discrimination under FCRA (Count X)

Case No. 23-cv-24442-BLOOM/Torres

      k.  Disability Discrimination under FCRA (Count XI)

      l.  Disability Discrimination under ADA (XII)

      m. Retaliation under the FMLA (XIV)

3.  PHT is not entitled to summary judgment on:

      a.  FMLA Interference (Count XIII)

**DONE AND ORDERED** in Chambers at Miami, Florida, on March 31, 2025.

 

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record